# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KATHRYN JOHNSON-HUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:10-00671** |
| **v.** | ) | **Judge Wiseman / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI") benefits, as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 20. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 28. Plaintiff has filed a Reply brief with attachments. Docket Nos. 32 - 32-4.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") benefits on

September 15, 2006, alleging that she had been disabled since April 1, 2002, due to

schizophrenia, bipolar disorder, PTSD, depression, anxiety disorder, eye problems, fatigue, back

pain, dyspnea, and asthma.  *See, e.g.,* Docket No. 12, Attachment ("TR"), pp. 81, 109-11.

Plaintiff's application was denied both initially (TR 70) and upon reconsideration (TR 71).

Plaintiff subsequently requested (TR 86) and received (TR 33) a hearing.  Plaintiff's hearing was

conducted on April 9, 2009, by Administrative Law Judge ("ALJ") Mary S. Lassy.  TR 33.

Plaintiff and Vocational Expert, Dr. Gary Sturgill, appeared and testified.  *Id.*

On July 15, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations.  TR 20-32.

Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since August 16, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: alcohol dependence, bipolar disorder, and residuals of bulging disc at L4-5 (20 CFR 416.920(c)).
>
> 3. The claimant's impairments, including the substance use disorder, meet Section 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).
>
> 4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
>
> 5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of

impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

6.      If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). She could sustain concentration, persistence and pace for simple tasks and some detailed work, able to interact with the general public and respond to routine changes.

7.      The claimant has no past relevant work (20 CFR 416.965).

8.      The claimant was born on September 16, 1959 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

9.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

10.      Transferrability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

11.      If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966).

12.      Because the claimant would not be disabled if she stopped the substance use (20 CFR 416.920(g)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 416.935).  Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision.

TR 25-32.

On July 18, 2009, Plaintiff timely filed a request for review of the hearing decision.  TR 17-18.  On May 14, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This civil

action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that: 1) the ALJ erred by not providing a "good reason" for assigning no weight to the opinion of Dr. Dull, Plaintiff's treating psychiatrist, and by failing to explain why she rejected the opinion of consultative examining physician Dr. Varnado; 2) the ALJ's determination that drug and alcohol abuse was material to the finding of disabled is not supported by substantial evidence; and 3) the ALJ did not appropriately address Plaintiff's subjective complaints of pain. Docket No. 20-1.[2] Accordingly, Plaintiff maintains that, pursuant

---

[2] Plaintiff, in her Reply brief, raises four primary issues, all of which focus on "Defendant's *post hoc rationale*." Docket No. 32. Specifically, Plaintiff, in her Reply, argues: (1) This Honorable Court should reject all of the Defendant's *post hoc rationale* created to support an ALJ decision devoid of such reasoning; (2) This Court should reject the Commissioner's *post hoc rationale* regarding, and reliance upon, the consultative report of Robert Doran, SLPE, who is not an "acceptable medical source" under SSA regulations; whose report was hardly mentioned much less relied upon by the ALJ; and whose report does not pass muster in any respect; (3) This Court should reject the Commissioner's *post hoc rationale* regarding Dr. Dull's assessment, whose opinion was entitled to great weight; and (4) Contrary to

to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to the Opinions of Treating and Consultative Physicians

Plaintiff maintains that the ALJ erred by not providing a "good reason" for assigning no weight to the assessment of Plaintiff's treating psychiatrist, Christopher Dull. Docket No. 20-1. Plaintiff additionally contends that the ALJ failed to explain "why she rejected the opinion of Dr.

---

the Commissioner's *post hoc rationale*, the ALJ did not follow SSA policy in determining whether DAA is "material" to the finding of disabled, and the ALJ's decision that DAA is material is not supported by substantial evidence. *Id.* As is demonstrated throughout this Report and Recommendation, the undersigned has analyzed each of the statements of error raised in Plaintiff's Motion and supporting brief, based strictly upon the evidence of record considered by the ALJ and articulated in her decision. Accordingly, any alleged "*post hoc rationale*" of Defendant is immaterial to the issues before the Court.

Varnado, who actually examined [Plaintiff] and credited her complaints of back pain, and instead adopted the opinion of the non-examining state agency physicians." *Id.*

Defendant responds that, contrary to Plaintiff's assertion that the ALJ accorded "no weight" to Dr. Dull's opinion, "[I]n actuality, the ALJ gave Dr. Dull's opinion full weight and relied on it for an opinion that [Plaintiff] was disabled with her alcohol addiction considered." Docket 28. Defendant also argues that the ALJ considered the opinion of Dr. Varnado, but properly accepted the contrary opinion of a consultative non-examining physician because Dr. Varnado's expressed limitation that Plaintiff was limited to only ten pounds of lifting and two hours of standing and walking was inconsistent with the other opinions of record and with Dr. Varnado's own notes. *Id.* Defendant also notes that, "one of the non-examining consultative physicians relied on by the ALJ specifically noted [Dr. Varnado's] examination results . . . in concluding that [Plaintiff] could perform medium work." *Id., citing* TR 1619. Defendant responds that the ALJ properly evaluated the opinion evidence of record and that the record supports the ALJ's determinations. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

     (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

     (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

     (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

     ...

20 CFR § 416.927(d) (emphasis added). *See also* 20 CFR § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

In the case at bar, Dr. Dull was Plaintiff's treating psychiatrist. Dr. Dull's opinion at issue was rendered in a "Questionnaire" completed on October 12, 2006. TR 219-21. In that

Questionnaire, Dr. Dull diagnosed Plaintiff with "Bipolar I Disorder Most Recent Episode Severe With Unspecified Psychotic Feature," and "Alcohol Dependence in Early Full Remission." TR 219. Dr. Dull indicated that Plaintiff suffered from: manic syndrome characterized by easy distractability; involvement in activities that have a high probability of painful consequences which are not recognized; and hallucinations, delusions, or paranoid thinking. *Id.* He further indicated that Plaintiff suffered from an anxiety related disorder with: (1) generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, and apprehensive expectation; (2) a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; and (3) recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. TR 219-20. Dr. Dull opined that Plaintiff suffered from "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate." TR 220-21. Dr. Dull also noted that Plaintiff had "a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.* Dr. Dull indicated that he based his opinion on Plaintiff's reported symptoms and behaviors, dating back to when she was 13 years old. TR 221.

In discussing Dr. Dull's opinion, the ALJ noted:

> Dr. Christopher Dull, treating psychiatrist, assessed the claimant with bipolar disorder and alcohol dependence in early full remission. According to Dr. Dull's opinion, the claimant's impairments impose marked limitations in her activities of daily living, maintaining social functioning and maintaining concentration, persistence, or pace.

TR 26, *citing* TR 219-221.

The ALJ continued, "[T]he objective and other evidence of record clearly shows that the claimant's history and continuous use of alcohol would impose marked limitations in two areas of functioning including her social interaction and concentration, persistence or pace." *Id.* As can be seen, while Plaintiff alleges that the ALJ erred by not providing "good reasons" for failing to accord proper weight to Dr. Dull's opinion that Plaintiff experienced "marked limitations in her activities of daily living, maintaining social functioning and maintaining concentration, persistence, or pace," the ALJ, in fact, adopted Dr. Dull's opinion when determining that Plaintiff was disabled as she presented with her alcohol addiction. Accordingly, Plaintiff's argument fails.

To the extent that Plaintiff argues that the ALJ erroneously failed to discuss Dr. Dull's opinion in her analysis of whether Plaintiff would continue to experience marked limitations if she abstained from alcohol use, Dr. Dull did not render such an opinion.[3] As will be discussed in greater detail below, as a threshold matter, the ALJ had to first determine if Plaintiff was disabled with her alcohol addiction. The ALJ accepted Dr. Dull's opinion in making this finding. *See* TR 26-27. Once the ALJ found that Plaintiff was disabled with her alcohol addiction, she was required to determine whether Plaintiff's alcoholism was a contributing factor material to her disability. The ALJ did not discuss Dr. Dull in her analysis at this step because Dr. Dull did not render an opinion regarding whether Plaintiff's alcoholism was a contributing factor material to her disability. After considering the evidence of record, the ALJ determined that Plaintiff's alcoholism was a contributing factor material to her disability. TR 30. Because the ALJ

_____

[3]In addition to the findings discussed above, Dr. Dull, in his opinion, diagnosed Plaintiff with "Alcohol Dependence in early full remission." TR 219. Dr. Dull based his opinion on Plaintiff's reports of symptoms and behaviors dating back to when she was 13 years old, which included years of alcohol use. Because Dr. Dull based his findings on periods that included alcohol use, the ALJ properly accepted Dr. Dull's opinion as being applicable to Plaintiff's limitations when she uses alcohol.

determined that Plaintiff's alcoholism was, in fact, a contributing factor material to her disability, 42 U.S.C. § 1382c(a)(3)(J) required that the ALJ find Plaintiff "not disabled" within the meaning of the Act.

As noted, Plaintiff additionally argues that the ALJ failed to explain her reasons for rejecting Dr. Varnado's opinion, and her reasons for accepting the opinion of the non-examining state agency physicians. Docket No. 20-1.

On November 6, 2006, consulting physician, Dr. Varnado, completed an "All Systems Examination" evaluation, wherein he opined, *inter alia*, that Plaintiff retained the capacity to lift and/or carry a maximum of pounds occasionally and frequently, stand and/or walk (with normal breaks) for at least two hours in an eight-hour day, and sit (with normal breaks) without restriction. TR 1323-31.

The ALJ ultimately determined that if Plaintiff "stopped the substance use," she retained the residual functional capacity for a reduced range of medium work. TR 31. In making this determination, the ALJ stated:

> The medical evidence of record clearly establishes that if the claimant were to discontinue substance abuse, she would continue to experience significant problems in her ability to perform work activity due to her musculoskeletal impairment and bipolar disorder.
>
> While the claimant may experience some visual problems, the record shows she has done well since surgery on her left eye in April 2007. Treatment records reflect her visual problems are corrected with glasses. No additional surgery has been recommended. Therefore, her visual problems would impose no more than minimal limitations on the claimant's ability to engage in work-related activities and are "non-severe."
>
> The record indicates that the claimant has required treatment for asthma. However, the medical evidence of record shows this

condition occurs on a very infrequent basis and responds appropriately to medication. Thus, this impairment would impose no more than minimal limitations on her ability to engage in work-related activities and is also "non-severe."

. . .

In terms of the claimant's alleged back pain, the record shows diagnostic evidence of "mild" degenerative changes with disc bulge and annular tear at L4-5. She was interested in no physical therapy, despite her allegation of severe back pain. Progress notes reflect ongoing intermittent complaints of back pain. Her treatment for her alleged disabling back pain has been very intermittent. Objective evidence shows only "mild" degenerative changes in the lumbar spine. There is no evidence of decreased range of motion in the lumbar spine or decreased sensation in her lower extremities. No treating physician has imposed any limitations on her ability to engage in work-related activities due to her musculoskeletal impairment. Results of a consultative medical evaluation were within normal limits with no tenderness or spasm in the lumbar spine.

TR 27-30 (internal citations omitted).

The ALJ also recounted Dr. Varnado's opinion regarding Plaintiff's retained physical abilities, discussed above, and noted that she found the State Agency medical consultants' opinions that Plaintiff could perform medium work activity to be persuasive, because, "This finding is clearly consistent with objective and other evidence of record regarding the claimant's physical capacity." TR 30. Because Dr. Varnado's restrictions were not supported by the evidence of record (including his own examination findings (*see* TR 1323-31)), the ALJ properly accorded greater weight to the opinions of record that were consistent with the evidence of record. *See* 20 CFR § 416.927(d); 20 CFR § 404.1527(d). Thus, the ALJ properly evaluated the physician opinions of record. Plaintiff's argument fails.

**2. Alcoholism or Drug Abuse**

Plaintiff argues that the ALJ did not follow SSA policy in determining whether drug or alcohol abuse ("DAA") was material to the finding of disabled, and that the ALJ's decision that drug and alcohol abuse was, in fact, material is not supported by substantial evidence. Docket No. 20-1. Plaintiff contends that she "suffered extreme abuse at the hands of her parents and then at the hands of the man she married at 15, and she has suffered from severe mental illness since she was a teenager, if not before." *Id.* Plaintiff argues that, "Even during periods of sobriety, her mental impairments have continued to markedly impair her ability to function, as confirmed in Dr. Dull's assessment." *Id.*

Plaintiff stresses that SSA policy mandates that "DAA will be found to be 'not material' when the limitations imposed by DAA cannot be separated from those imposed by the claimant's other mental condition." *Id.* Plaintiff argues that the ALJ did not properly evaluate the issue of DAA, because the ALJ analyzed the "DAA materiality" issue by considering whether Plaintiff was "still drinking and drugging," not whether she would still be disabled if she stopped using alcohol or drugs. *Id.* Plaintiff maintains that "the confused nature of the ALJ's DAA materiality determination is well illustrated in her findings regarding 'episodes of deterioration,'" because: (1) the ALJ erroneously reported that Plaintiff had experienced no episodes of decompensation, when, in fact, the record shows that Plaintiff had been repeatedly hospitalized for "suicidal thoughts and attempts, hallucinations, etc."; and (2) the ALJ then concluded that Plaintiff "would experience one or two episodes of decompensation if the substance abuse was stopped." *Id.* Plaintiff argues that the ALJ's "inexplicable conclusion" that stopping the use of alcohol would cause Plaintiff to decompensate sometimes even though she did not decompensate when drinking was "so preposterous as to be dumbfounding" so as to require remand or reversal. *Id.*

Defendant responds that the ALJ's determination that Plaintiff's alcoholism was a contributing factor material to her disability was proper. Docket 28. Defendant contends that Plaintiff's argument regarding alcohol as a contributing factor "presumes that Dr. Dull's opinion should have been given controlling weight and . . . ignores the value of Dr. Jasnowitz's opinion." *Id.* Defendant maintains that Dr. Jasnowitz's opinion was rendered at a time when Plaintiff was not using alcohol, and that after a full cognitive examination, Dr. Jasnowitz concluded that Plaintiff did not "exhibit signs of anxiety or of depression, did not describe symptoms of bipolar or panic disorder, did not exhibit signs of psychosis, and she had no thought disorder." *Id., citing* TR 1339. Defendant also notes that Dr. Jasnowitz opined that Plaintiff had only mild limitations in understanding and remembering, sustained concentration and persistence, and interaction with others, and moderate limitations in adapting to changes and requirements. *Id., citing* TR 1340. Additionally, Defendant notes that Dr. Jasnowitz did not diagnose Plaintiff with any clinical or personality disorders. *Id.* Defendant explains that Dr. Jasnowitz "clearly found that [Plaintiff] was fairly unlimited during sobriety," and that the ALJ "could easily, and properly, determine that [Plaintiff's] alcoholism was a contributing factor material to her disability." *Id.* Defendant further maintains that, while the Plaintiff is correct in her assertion that the ALJ erred in stating that Plaintiff had experienced no episodes of decompensation, that error was not significant, as the ALJ actually concluded that Plaintiff was disabled given her alcoholism. *Id.*

With regard to the evaluation of whether drug abuse or alcoholism is a contributing factor material to the determination of disability, the Code of Federal Regulations states:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the

determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling....

20 CFR § 416.935(b).

The ALJ, in the case at bar, determined that Plaintiff's impairments, including her substance disorder, met Section 12.09 of CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)). TR 26. The ALJ also determined that, if Plaintiff "stopped the substance abuse, the remaining limitations would cause more than a minimal impact on [her] ability to perform basic work activities," such that she "would continue to have a severe impairment or combination of impairments. TR 27. The ALJ ultimately determined, however, that if Plaintiff "stopped the substance abuse, [she] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))." *Id.*

The ALJ, in the case at bar, considered all of the medical, non-medical, and testimonial evidence, and ultimately determined that Plaintiff's substance abuse was a contributing factor material to the determination of disability. *See* TR 25-31. In making this determination, the ALJ stated:

In activities of daily living, the claimant has moderate restriction. The evidence of record shows that Ms. Hunt performs very few household chores due to her chronic alcohol abuse.

In social functioning, the claimant has marked difficulties. The record reflects Ms. Hunt experiences frequent mood swings which in combination with her substance abuse limit her ability to

interact appropriately with others.

With regard to concentration, persistence or pace, the claimant has marked difficulties. The claimant's continual alcohol abuse significantly impacts her ability to maintain attention and concentration for extended periods of time.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation.[4] The record shows no evidence of limitations in the claimant's adaptive functioning.

Because the claimant's mental impairments, including the substance use disorder, cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are satisfied.
. . .

[T]he claimant would have mild restriction in activities of daily living if the substance use was stopped. The evidence of record demonstrates the claimant engages in normal activities throughout the day including some light household chores.

In social functioning, the claimant would have moderate difficulties if the substance use was stopped. The record shows ongoing depression and anxiety which impacts her ability to interact frequently with others. She shops occasionally but engages in no other social activities. She becomes extremely nervous around others and prefers to be alone.

With regard to concentration, persistence or pace, the claimant would have moderate difficulties if the substance abuse was stopped. The claimant's depression and anxiety significantly impact her ability to maintain attention and concentration for extended periods of time.

As for episodes of decompensation, the claimant would experience

---

[4] As the parties correctly note, the ALJ mistakenly stated that "the claimant has experienced no episodes of decompensation," while the record reflects that Plaintiff has experienced multiple episodes of decompensation. Significantly, however, the ALJ later corrected this misstatement, when, in finding that Plaintiff was disabled given her alcoholism, the ALJ referenced "repeated episodes of decompensation." TR 26. The ALJ's original misstatement is, therefore, insignificant with regard to the ALJ's ultimate determination.

one to two episodes of decompensation if the substance use was stopped. The record shows some limitations in the claimant's adaptive functioning.

Because the remaining limitations would not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria would not be satisfied if the claimant stopped the substance abuse.

TR 26-28 (footnote added). The ALJ additionally noted that the "paragraph C" criteria would not be satisfied if Plaintiff stopped abusing alcohol. TR 28.

Referencing in his decision the medical assessments and treatment notes from Drs. Dull, Varnado, Jasnowitz, Bell, Misra, Phay, and Kupstas, the ALJ also explained that, "no treating physician has imposed any limitations on [Plaintiff's] ability to engage in work-related activities due to her musculoskeletal impairment." TR 29. With regard to Plaintiff's mental impairments, the ALJ stated:

[T]he record clearly establishes a long history of chronic alcohol abuse and bipolar disorder. Ms. Hunt has required numerous hospitalizations for alcohol withdrawal with related blackouts and delirium tremors. She has a long history of legal problems to include DUI's interfering with steady employment, and relationship and health problems. In 2003 she was hospitalized at least on three occasions for her bipolar affective disorder with psychotic features and suicide attempts. Her symptoms were noted to be a result of a relapse in her drinking. At the time of her admissions the claimant was experiencing acute feelings of hopelessness, anhedonia, depressed mood, poor activity level and increased confusion. She was diagnosed with schizophrenia and chronic paranoia with acute exacerbation of seizure-like activity.

Ongoing treatment records reflect intermittent episodes of acute major depression. Her medications were adjusted on numerous occasions, but she continued to complain of intermittent depression and anxiety. She required emergency room treatment, as well as inpatient hospitalization for alcohol intoxication, and suicide attempts on at least two occasions in 2007. Her symptoms appear to intensify due to life stressors including altercations with her

19

family and friends. She continues to carry to a diagnosis of schizophrenia, bipolar disorder and alcoholism. Results of a consultative psychological evaluation reflect a current GAF scale of 60 to 65 with no signs of anxiety or depression. Dr. Patricia Jasnowitz, consulting psychologist, noted mild limitations in the claimant's functioning with the exception of moderate limits in her ability to adapt to changes.

Ongoing mental health records indicate an increase in the claimant's symptoms when she runs out of her medication. She reportedly was no longer drinking in September 2008 and she was "doing quite well," on her current medication. In December 2008 her mood was stable with no evidence of any psychotic symptoms.

...[T]he undersigned adopts the limitations assessed by non-examining State Agency psychologists.

In summary, if the claimant were to stop using alcohol, she ... can sustain concentration, persistence and pace for simple tasks and some detailed work, as well as interact fairly well with the general public and respond to routine changes in a work-setting. This is consistent with the objective and clinical findings of record in regard to her physical and mental impairments.

TR 29-30 (internal citations omitted).

As can be seen, the ALJ discussed the evidence of record, and properly determined first, that Plaintiff was disabled with her alcohol addiction, and then, that Plaintiff's alcoholism was a contributing factor material to her disability, such that she was "not disabled" within the meaning of the Act . The ALJ's determination that substance abuse was a contributing factor material to the determination of disability is supported by "substantial evidence." Because substantial evidence supports the ALJ's decision, that decision must stand.

### 3. Subjective Complaints of Pain

Plaintiff contends that the ALJ's credibility finding was contrary to the evidence and "confusing at best." Docket No. 20-1. Plaintiff states that "the ALJ attributes almost all of

[Plaintiff's] impairments in mental functioning, activities of daily living, etc. to a [*sic*] her alcohol use, but the evidence is uniformly to the contrary." *Id.*

Defendant responds that the ALJ's "credibility finding was proper" and based on substantial evidence. Docket No. 28.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of disabling symptoms:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that:

> If the claimant stopped the substance abuse, . . . the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . .

TR 29.

In making this determination, the ALJ stated:

> The claimant is a younger individual with the equivalence of a high school diploma alleging disability due to depression, anxiety and some low back pain. She reports a very long history of mental problems including mood swings and schizoid paranoia with chronic alcohol abuse. According to the claimant she uses alcohol for "self-medication" to help depressive symptoms. Ms. Hunt further testified to a history of occasional suicidal thoughts due to her chronic alcohol abuse. She reports significant problems being around others due to paranoid thoughts. She missed a lot of work due to these paranoid feelings. She has required numerous inpatient hospitalizations for alcohol abuse. She experiences persistent "racing thoughts" due to anxiety. She reports some improvement in her symptoms with appropriate medication. She is depressed and anxious most days. During the day she watches TV and lies around. She shops occasionally but engages in no social

activities. She reportedly is unable to stand on her feet for
prolonged periods of time due to weakness and pain in her lower
extremities.  She uses a massager and ice packs for her back pain.
She must lie down after any prolonged strenuous activity.  She
continues to go to Alcoholics Anonymous, and has maintained
sobriety since January 1, 2009.

TR 28-29.

As discussed in the previous statements of error above, the ALJ also considered in detail

Plaintiff's mental and physical impairments.  The ALJ's decision specifically addressed in great

detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims,

clearly indicating that these factors were considered.  TR 25-30.  The ALJ's decision properly

discussed Plaintiff's "activities; the location, duration, frequency and intensity of claimant's

pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the

other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 CFR §

404.1529(c)(2)).  It is clear from the ALJ's detailed articulated rationale that, although there is

evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that

were inconsistent with Plaintiff's allegations.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

medical evidence against Plaintiff's subjective claims and reach a credibility determination.  *See,*

*e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).  An

ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference,

particularly because the ALJ is charged with the duty of observing the claimant's demeanor and

credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir.

1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the

medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.

*See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that if Plaintiff discontinued her substance abuse, she would have the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments were not credible to the extent that they were inconsistent with this residual functional capacity assessment. TR 28-29. The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and her evaluation of Plaintiff's credibility was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge